**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JASON DAVALOS, SONIA DAVALOS, SOL TAN TANNING & SPA LLC, On Behalf of Themselves And All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>HYDRAFACIAL LLC dba THE HYDRAFACIAL COMPANY, and THE BEAUTY HEALTH COMPANY,<br><br>          Defendants. | No. ___**24-cv-8073**___<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

**NATURE OF THE ACTION**

1.      This class action arises from Defendant Hydrafacial LLC's (Hydrafacial") and its

parent company's, Defendant The Beauty Health Company, (collectively "Defendants")

misleading statements about, and sales of, their machine, the "Syndeo."  The Syndeo was sold to

spas and aesthetic salons nationwide as a treatment device that applies customizable serums

tailored to each patient's skin.  Defendants touted Syndeo as a revolutionary device, transforming

the aesthetics industry.  Defendants claimed a successful U.S. launch with enthusiastic customers

and a promising global future.  Defendants, however, hid from their customers who had

purchased the machine at a cost of tens of thousands of dollars that critical design flaws plagued

the machine causing widespread malfunctions.  Despite undisclosed efforts to fix them, Syndeo's

problems persisted.

2.      That was the fate of Plaintiff Sol Tanning & Spa, LLC ("Sol Tanning").  Plaintiff

Sol Tanning, which runs a spa providing facial aesthetic treatments to its clients in Northern

California, purchased a Syndeo machine from Defendants after meeting with Defendants'

representative who had boasted about the machine and its capability to provide aesthetic

treatments.  Almost immediately after the purchase, however, the Syndeo machine began failing.

Due to a design flaw, Syndeo systems using serums routinely clogged up, preventing the

customer from being able to use the machine. Those consistent clogs would prevent the machine

from providing enough suction to work as intended or achieve the purpose for which the

machine was purchased.  In addition, the machine would exhibit heavy vibration and emit loud

noises, which were incompatible with a machine designed to be used in a spa environment.

3.      After Plaintiff Sol Tanning experienced these issues, a representative of

Defendants consulted with Plaintiffs Jason and Sonia Davalos (the principals of Plaintiff Sol Tanning & Spa LLC), confirmed the flaws in the machine, and provided a replacement Syndeo machine.  That "fix" was short-lived.   Shortly after the replacement machine arrived at Plaintiffs' spa, it too began exhibiting the same malfunctions that had plagued Plaintiffs' original Syndeo machine.  In retrospect, this was hardly surprising.  It turns out that, without disclosing the inherent design flaws that plagued the Syndeo machine, Defendants were instead quickly sending "replacement" machines to the many customers who complained about the machine failing.  But these replacement machines, still plagued by the same defect affecting the original Syndeos, also consistently failed.

4.      The failure of Plaintiffs' second Syndeo machine has left Plaintiffs with an unusable device for which they paid approximately $30,000.  Moreover, the machine's failure adversely impacted Plaintiffs' business reputation, as customers on whom the machine was used had an unacceptable spa experience that reflected poorly on Plaintiffs' reputation.

5.      Neither this Class Action Complaint nor its core allegations are made on a clean slate.  Instead, at the end of last year, after Defendant Beauty Health Company lost approximately half of its market value following its earnings release, its CEO publicly admitted the cause was attributable to the costs the company recorded as a result of the systemic defects plaguing the Syndeo machines.  In a November 14, 2023 article published in the journal MarketWatch entitled, "*HydraFacial parent's stock cut in half after 'many mistakes' lead to ugly quarter*," that Defendant's Chief Financial Officer, Michael Monahan, admitted the systemic failures plaguing the Syndeo machines:

**Rough times for Syndeo**

Some time after Syndeo 1.0 was launched in March 2022, CFO Monahan said some ***providers experienced 'frequent treatment interruptions and issues,' including distractive noises and difficulties in bottle insertion. There was an issue with low flow and clogs in the system.*** For the rest of 2022 and for the first half of 2023, several enhancements were made to address the issues, ***including the release of Syndeo 2.0, but the issues persisted.***

'After rigorous testing and development, including simulating over 10 years of heavy in-office use, we believe we have addressed the Syndeo issues with our current Syndeo 3.0 standard implemented in July of this year,' Monahan said.

The company took an impairment charge of $18.8 million as the 4,300 Syndeo 1.0 and 2.0 devices were designated at 'obsolete.' The company also incurred costs of $12.3 million to enhance or replace 1.0 and 2.0 devices.

And finally, the company accumulated $32.1 million in costs to enhance or replace that roughly 4,500 Syndeo 1.0 and 2.0 devices that have not yet been addressed.

'This decision was made after concluding ***it was too costly to diagnose, repair and resell returned Syndeo 1.0 or 2.0 devices in inventory***,' Monahan said. 'In addition, by replacing the systems or enhancing currently functioning systems in the field, we are ensuring provider satisfaction and safeguarding our brand equity.'

Ex. 1 hereto (emphasis added).

6.      Although Monahan claimed that Defendants finally rectified the systemic flaws present in their Syndeo machines by releasing version 3.0 of the machine, that too proved to be false.  That version was still plagued by systemic defects that caused the machines to continue malfunctioning.  Indeed, online message boards and fora are replete with postings from affected Syndeo machine purchasers, including owners of the Syndeo 3.0, who continue to experience the same machine failures.  Upon information and belief, the replacement machine that Defendants provided Plaintiffs was a Version 3.0, but that machine failed just as badly as the original Syndeo machine Plaintiffs had.

7.      The net result is that Defendants manufactured and sold a machine to Plaintiffs and spa owners nationwide that Defendants have since admitted was plagued by defects and

could not perform for the purpose for which it was sold.  Despite this, Defendants have failed to make any refund for the purchases by Plaintiffs and absent class members of these defective Syndeo machines.  At most, Defendants have instead offered replacement machines that exhibit the same or similar flaws as the machines they purportedly replace, thereby hardly resolving the issues.  Plaintiffs, who paid Defendant nearly $30,000 for a machine that does not work, therefore bring this lawsuit on behalf of themselves and all other similarly situated purchases of Defendants' Syndeo machines in the United States.  Plaintiffs seek monetary, equitable, and injunctive relief for Defendants': 1) violation of New York's General Business Law, § 349; 2) violation of New York's General Business Law, § 350; 3) breach of contract; 4) breach of the implied warranty of merchantability; and, 5) breach of the implied warranty of fitness for a particular purpose.

## **PARTIES**

8.    Plaintiff Sol Tan Tanning & Spa LLC is a limited liability company organized under the laws of the State of California and having its principal place of business at 1125 Luchessi Drive in San Jose, California 95118.  Plaintiffs Jason Davalos and Sonia Davalos are husband and wife residents of California, who are the two sole members of Plaintiff Sol Tanning & Spa LLC.  Plaintiff Sol Tan Tanning & Spa LLC operates a spa and tanning salon in San Jose.   On March 28, 2023 Plaintiffs executed a contractual agreement entitled, "Equipment Purchase Agreement (Syndeo)" with Defendant Hydrafacial LLC by which Plaintiffs purchased a Syndeo machine having an "Extended Price" of $28,900.   That Equipment Purchase Agreement (Syndeo) also contains a an appended Minimum Advertised Pricing Policy ("MAPP") document and a License Agreement by which Plaintiffs are given a license to certain Hydrafacial trademarks and copyrights in connection with Plaintiffs' use of the Syndeo machine.  A true and

correct copy of that entire agreement (inclusive of the MAPP and License Agreement attached documents) is attached hereto as Exhibit 2. The Agreement contains an express 2-year Limited Warranty. *See* Ex. 2, at § 3.

9.    Shortly after Plaintiffs obtained the Syndeo machine from Defendant Hydrafacial LLC, the machine began malfunctioning. After Plaintiffs complained and had Defendants' representative confirm the machine's inability to perform, Plaintiffs were provided a replacement machine by Defendants. Shortly thereafter, however, that replacement machine also failed and began exhibiting the same issues that the original Syndeo machine Plaintiffs purchased had exhibited. Plaintiffs again complained to Defendant Hydrafacial LLC. Despite this history of failures, at no time have Defendants offered to refund Plaintiffs any of their purchase money for the machines, either for the time that Plaintiffs were provided a machine that did not work or, much less, a full refund for providing a machine that simply could not provide that which was represented it would do.

10.    Defendant Hydrafacial LLC, which does or has done business as The HydraFacial Company, is a limited liability company organized under the laws of the State of California and having its principal place of business at 2165 E. Spring Street in Long Beach, California 90806. Defendant is wholly owned by its publicly traded parent company, Defendant The Beauty Health Company, a corporation organized under the laws of the State of Delaware and having its principal place of business at the same location as the principal place of business of Defendant; namely, 2165 E. Spring Street in Long Beach, California 90806. Defendants were the entities that marketed and sold the Syndeo machines, including the Syndeo machine purchased by Plaintiffs and the replacement machine provided to Plaintiffs after the original Syndeo machine was plagued by performance problems.

## CHOICE OF LAW AND VENUE

11.    Although Defendants sold the Syndeo machines nationwide, Defendants' standard Equipment Purchase Agreement, including the one documenting Plaintiffs' purchase of their Syndeo machine, contained a choice of law provision selecting New York law as governing any disputes between the parties and selecting exclusively the courts of the State of New York as the venue to adjudicate any disputes between the contracting parties. *See* Ex. 2 hereto, at License Agreement, § 18.

## JURISDICTION AND VENUE

12.    This Court has personal jurisdiction over Defendants because Defendant do, and during the Class Periods, have done business within this judicial district, including business related to the marketing and sales of Syndeo machines.  Further, this Court independently has personal jurisdiction over Defendants because Defendants voluntarily submitted themselves to the jurisdiction of the courts of the State of New York by drafting and executing a Licensing Agreement pertaining to the sales of their Syndeo machines in which Defendants and all contracting parties agreed to select the courts of New York as the exclusive venue to adjudicate the disputes between the parties.

13.    This Court has subject-matter jurisdiction over all counts of this Class Action Complaint under the Class Action Fairness Act, 28 U.S.C. § 1332 because the Class Action Complaint involves a class of diverse citizenship (nationwide) than the citizenship of Defendants (California) and the amount in controversy exceeds $5 million exclusive of interest and costs.

14.    Venue is proper in this judicial district because the parties' Licensing Agreement relating to Defendants' sale of Syndeo machines selected the courts of the State of New York as the exclusive venue to adjudicate all disputes.  Moreover, Defendants do and have done business

within this judicial district pertaining to its marketing and sales of the Syndeo machines.  Venue

is therefore proper under 28 U.S.C. § 1391.

## DEFENDANTS' LAUNCH OF THE HYDRAFACIAL MACHINE AND  FAILURE TO DISCLOSE THE TRUTH ABOUT THE MACHINE'S DEFECTIVE NATURE

15.     Defendants market and sell their facial machines under the "Hydrafacial" brand, a

popular aesthetic treatment that uses a unique technology to cleanse, exfoliate, and hydrate the

skin. The Hydrafacial treatment involves a multi-step process that vacuums out impurities,

removes dead skin cells, and infuses the skin with nourishing serums. Hydrafacial treatments

address a variety of skin concerns, like fine lines, wrinkles, acne, and uneven skin.

16.     In March 2022, Defendant The Beauty Health Company launched the "Syndeo"

as the next generation of its popular Hydrafacial machine. This digitally connected device

boasted s everal innovative features aimed at enhancing both the provider and client experience.

Meaning "connected" in Greek, "Syndeo" promised a more personalized treatment through

cloud-based software that tracked client history and preferences. This data allows providers to

tailor treatment plans and potentially offer more targeted product recommendations. Additionally,

Syndeo offers features designed to increase client engagement, such as branding and

gamification elements.

17.     Unbeknownst to salon and spa owners to whom the Syndeo was targeted, due to

design defects, the Syndeo devices suffered from a wide array of performance issues, including

part non-conformance, distractive noises, difficult bottle insertion, suction/waste/leakage, and

faulty handpieces, screens, and rattling trays. Most vexing, Syndeo suffered from low flow and

clogs in the system, severely hindering its functionality. These frequent treatment interruptions

and performance issues were widespread.

18.     Defendants knew throughout the entirety of Syndeo's systemic problems. In late

April/early May 2022, just two months after Syndeo's purportedly "next level" commercial launch, Liyuan Woo, the then-CFO of Defendant The Beauty Health Company, received repeated reports that Syndeo's new design and offshore manufacturer caused issues in the systems, leading to numerous customer complaints about part fitment and blemishes. At the same time, CFO Woo learned of a more serious plugging problem caused by Syndeo's smaller manifold leading to low flow and clogs in the system.

19.    Rather than shelve the product to address the design and manufacturing issues causing these problems in early version Syndeo systems, Woo told subordinates and personnel of Defendant Hydrafacial LLC to continue production and sales, telling subordinates that if the customer raised a complaint to send them a new replacement machine. Of course, Defendants' decision to replace the Syndeo machine with a new machine did not resolve the cosmetic and performance issues. Defendants would send out a new machine that had the exact same problems as the replaced machine, leading only to increased customer dissatisfaction.

20.    By late April/early May 2022, the customer complaints regarding the plugging issues had reached a critical mass. At this time, Defendants commenced a secret project spearheaded by Woo's operations team to identify the cause of the plugging issue and generate an effective solution. From late April/early May 2022 up until July 2022, the operations team conducted testing and ultimately surmised that they could remediate the plugging issue by creating a giant port to the manifold instead of the small channel per the original design. Defendant Woo received repeated reports of the status of the project through minutes and action plans generated from regular so-called "Tiger Team" meetings. In addition, Andrew Stanleick (CEO of Defendant The Beauty Health Company) and Woo attended a meeting with other high ranking company officials to review the operations team's proposed re-design of Syndeo.

Despite the R&D/Quality team expressing the belief that the proposed larger channel was ***not*** a sure fix and that further testing was needed, in July 2022, the Defendants approved and signed off on the operation team's recommended re-design, which Defendants would later refer to as "Syndeo 2.0."

21.    Unsurprisingly, Defendants' release of Syndeo 2.0 out to the field –in essence, yet another undisclosed beta testing on paying customers – turned out to be equally disastrous.  By September/October 2022, Defendants learned that Syndeo 2.0 failed to cure the plugging issue. What's more, Syndeo's 2.0 design of creating a larger channel manifold resulted in a new problem: wasting too much serum.  Further, in or around the same time, Defendants learned that a certain portion of newly sold Syndeo 2.0 systems were inoperable due to one of Defendant The Beauty Health Company's major suppliers including an authorized computer chip, requiring the dispatching engineers to the field to fix each of the Syndeos.

22.    Despite having no effective remediation plan, Defendants continued to sell defective Syndeo 2.0 devices to customers. When customers raised complaints, Defendants continued to string customers along by engaging in a cycle of having the customers return machines and then sending new but similarly defective Syndeo machines out.  By fall of 2022, the number of returned Syndeo systems began to pile up at Hydrafacial's Long Beach warehouse, numbering over 2,000 and taking up substantial space on the assembly floor. In violation of quality management standards, Defendants failed to tag the machines identifying whether they were tested or refurbished, or the device's identified malfunction.

23.    Nevertheless, Defendants and its executives concealed the Syndeo issues, while repeatedly touting the "the highly successful," "flawless global launch" and "strong rollout" of Syndeo. It continuously emphasized that there was "strong enthusiasm for product" and "strong

early feedback we are receiving from the field." Instead of disclosing the cosmetic- and performance-related issues, Defendants highlighted Syndeo's "really handy functional benefits," Syndeo's "enhanced ease-of-use and intuitive operation" and Syndeo's "ease of operation, design, and use for our aestheticians." In response to analyst inquiry, rather than revealing the customer complaints, Defendant The Beauty Health Company stressed that "customers are raving about the connected system and user experience" and that the company was receiving "really good feedback on" Syndeo's "data connectivity, the improvements in user interface, the touch screen technology, the LightStim LED, et cetera."

24.    The end result of these failure was that by November 2023, Defendant The Beauty Health Company turned in disastrous 3Q 2023 results, lowered guidance for the year, and suspended 2025 targets.

25.    On the earnings call, Defendant The Beauty Health Company's new CEO and CFO blamed the poor quarter and dismal outlook on having to address product issues experienced after last year's U.S. Syndeo launch, which would take additional time to remediate.

26.    Defendant The Beauty Health Company explained that Syndeo 2.0 meant to fix the performance issues with the first-generation product. But Syndeo 2.0 itself was found to have flow issues, which necessitated yet another update, Syndeo 3.0.  Defendant The Beauty Health Company disclosed that its remediation plan would come at a substantial cost.  It stated that U.S. Syndeo customers would now have the option of a field upgrade or swapping in a new Syndeo 3.0 delivery system, for which the company will take a special charge of $44.4 million plus an inventory write-off of $18.8 million. The Beauty Health Company confirmed the widespread nature of Syndeo's problems.  New management stated that it had begun the process in the fourth

quarter, enhancing or replacing 2,850 instruments, with plans to upgrade or replace another 4,500 instruments.

### THE SYNDEO 3.0 REMAINS DEFECTIVE

27.     True to form, Defendants' latest "fix," their so-called Syndeo 3.0, also failed to resolve the systemic defects plaguing the Syndeo machines.   While the Syndeo 3.0 Version came to be implemented as the standard machine offering as of July 2023, complaints from customers who purchased the machines continued well beyond that time.

28.     By then, Defendants had designated the Syndeo 1.0 and Syndeo 2.0 as "obsolete' effectively conceding the worthless nature of these devices.  Still, Defendants offered no refunds to customers, like Plaintiffs, who had paid for the Syndeo device—a machine whose defective nature not only was never disclosed by Defendants to their customers but also rendered them worthless for the purpose for which they were bought.

29.     Instead of refunding Plaintiffs' and class members' payment for devices that clearly did not work, by October 2023, the sole redress Defendants offered was to either "upgrade" Plaintiffs' or class members' Syndeo 1.0 or Syndeo 2.0 machines to the "Syndeo 3.0 standards" or to exchange their machines for the Syndeo 3.0 version, or to add an extra year to the limited warranty for the machine.

30.     None of this solved the problems.  Not only was the Syndeo 3.0 still plagued by defects that led the machines to exhibit similar failures as the prior versions, but Defendants' offering failed to compensate at all Plaintiffs and the class members for the period of time in which they were given machines that did not work as designed.

## CLASS ACTION ALLEGATIONS

31.     Pursuant to Federal Rules of Civil Procedure 23(b)(3) and (b)(2), Plaintiffs bring this action as a class action on behalf of themselves and all other similarly situated purchasers within the United States of Defendant's Syndeo machines.  Specifically excluded from all this putative class definition are Defendants, their employees, directors and employees and officers or corporate affiliates.  Plaintiffs reserve the right to amend this putative class definition as discovery or other case circumstances may warrant.

32.     Class certification is appropriate because the class sought to be certified is more than sufficiently numerous to make joinder practical.  Based on publicly filed documents and press reporting, tens of thousands of Syndeo machines were sold by Defendants within the United States.

33.     Class certification is appropriate because Plaintiffs and their counsel are adequate class representatives.  Like all members of the class Plaintiffs seek to represent, Plaintiffs purchased a Syndeo machine for valuable consideration and, like all class members, Plaintiffs' machine was plagued by a systemic design or manufacturing defect.  Plaintiffs alleges that Defendants violated New York's applicable consumer protection statutes, breached their Purchase Agreements pertaining to the Syndeo machines Defendants sold to Plaintiffs and the class members, and breached the implied warranty obligations.   Plaintiffs' counsel are experienced in class action litigation and will adequately represent the interests of putative class members.

34.     Class certification is appropriate because Plaintiffs' action raises common questions of fact or law, whose means of proof predominates over questions that may call for individual adjudication.  Among these predominating common questions of fact or law are:

a.   Whether Defendants' Syndeo machines are defective;

12

b. Whether Defendants' representations and omissions about the Syndeo machine violated New York's General Business Law;

c. Whether Defendants breached the Equipment Purchase Agreement with respect to the sale of the Syndeo machines;

d. Whether the implied warranties of merchantability and fitness for a particular purpose are applicable to Defendants' sale of Syndeo machines to class members and, if so, whether Defendants' conduct breached these implied warranties;

e. The measure of any damages, restitution, or other recovery due to the class members as a result of Defendants' conduct alleged herein;

f. Whether Defendants' continued marketing of the Syndeo machines in the manner in which it is doing should be enjoined.

35.    Class certification is appropriate because Plaintiffs' claims are typical of the claims asserted on behalf of the putative class members.  Plaintiffs, like all class members, claim that they were harmed because Defendants falsely marketed and sold Syndeo machines that were defective and failed to disclose the defects plaguing the machines.  All claims asserted by Plaintiffs also are asserted on behalf of all class members, and there are no conflicts of interest that render Plaintiffs' claims or interests atypical of the claims or interests of the class members.

36.    Class certification is appropriate because classwide adjudication of the claims alleged by Plaintiffs is superior to separate adjudication by individual class members, which may yield conflicting results, judgments, and obligations.  Further, the costs of litigating this complex action against Defendants renders individual litigation impractical and unfeasible, thereby rendering classwide adjudication a superior means of resolving the claims alleged in this Class Action Complaint.

37.    Class certification also is separately and independently appropriate because Defendants have acted or refused to act on grounds generally applicable to the class, such that final injunctive relief or declaratory relief is appropriate respecting the class as a whole.

## <u>COUNT I</u>

### (Violation of N.Y. G.B.L., § 349)

38.    Plaintiffs hereby incorporate by referenced paragraphs 1-37 of this Class Action Complaint with the same force and effect as if these allegations had been restated herein.

39.    Defendants' conduct in marketing and selling their defective Syndeo machines without disclosing the defects plaguing the machines (and instead all the while touting their supposed superior attributes) amounts to a deceptive and unfair business practice within the meaning of New York's General Business Law, § 349.

40.    Plaintiffs, who paid nearly $30,000 for Defendant's Syndeo machine, were, like all class members, injured as a result of Defendants' deceptive and unfair business practices because, *inter alia*, they received a defective machine that did not conform to the promises or representations made about it by Defendants and for which Plaintiffs and the class members paid valuable consideration.

41.    Plaintiffs therefore are entitled to and do hereby seek as redress money damages, including a full or partial refund of the price paid for the Syndeo machine.  Moreover, Defendants' conduct that amounted to violations of G.B.L., § 349 was willful.  Defendants, for example, knew that their Syndeo machine could not work as it had touted, was defective, and that merely replacing the machine with another Syndeo unit (that exhibited the same systemic defects) would not solve the issue.  Despite this, Defendants continued selling the machine instead of refunding Plaintiffs and class members for the same.   Because Defendants' conduct in violation  G.B.L., §349 was willful, Plaintiffs and the class members are entitled to and do seek a

trebling of any money damages awarded as redress for Defendants' violation of this statute. Plaintiffs also seek an award of attorneys' fees as redress for Defendants' violations of this statute.

## COUNT II
### (Violations Of N.Y. G.B.L., § 350)

42.    Plaintiffs hereby incorporate by referenced paragraphs 1-37 of this Class Action Complaint with the same force and effect as if these allegations had been restated herein.

43.    Defendants' actions and conduct alleged herein in connection with its marketing and sale of its Syndeo machine amounts to "false advertising" within the meaning of G.B.L., §350. Defendants' false advertising had a tendency to and did mislead Plaintiffs and the class members into believing that they were buying a Syndeo machine that could perform in the manner it had been touted and represented by Defendants when, in fact, Defendants failed to disclose to Plaintiffs or class members that the Syndeo machines suffered from systemic defects that impaired the machines' proper functioning.

44.    Defendants' false advertising has injured and continues to injure Plaintiffs and the class members. As a result of Defendants' false advertising, Plaintiffs purchased for valuable consideration a Syndeo machine that failed to live up to the representations Defendants made about it. To date, Defendants: continue to market and sell the Syndeo, which still is defective; continue to deny any refunds for the defective machines; and, continue to avoid taking any action to remedy the harm to the business reputation visited upon Plaintiffs and class members as a result of Defendants' defective Syndeo machines.

45.    Plaintiffs therefore are entitled to and do seek as redress money damages, including a full or partial refund of the price paid for the Syndeo machine. Because Defendants' conduct is ongoing, Plaintiffs and the class members also seek appropriate injunctive relief that,

*inter alia*, would enjoin Defendants from continuing to market, service, or replace the Syndeo machines without disclosing the systemic defects plaguing the machines.

46.    Defendants' conduct that amounted to violations of G.B.L., § 350 was willful. Defendants, for example, knew that their Syndeo machine could not work as Defendants had touted, was defective, and that merely replacing the machine with another Syndeo unit (that exhibited the same systemic defects) would not solve the issue.  Despite this, Defendants continued selling the machine instead of refunding Plaintiffs and class members for the same. Because Defendants' conduct in violation  G.B.L., §350 was willful, Plaintiffs and the class members are entitled to and do seek a trebling of any money damages awarded as redress for Defendants' violation of this statute.  Plaintiffs also seek an award of attorneys' fees as redress for Defendants' violations of this statute.

## <u>COUNT III</u>
### (Breach of Contract)

47.    Plaintiffs hereby incorporate by referenced paragraphs 1-37 of this Class Action Complaint with the same force and effect as if these allegations had been restated herein.

48.    Plaintiffs' purchase of the Syndeo machine, like the purchase of the machine by all class members, was documented in an Equipment Purchase Agreement (Syndeo) drafted by Defendants.  *See* Ex. 2 hereto.

49.    Under the contract, Plaintiffs paid Defendant $28,900 for the Syndeo machine. Defendants, however, breached the Equipment Purchase Agreement because the equipment provided was a defective non-functional Syndeo machine.

50.    Moreover, the Equipment Purchase Agreement contained a 2-year Limited Express Warranty.  But instead of honoring the terms of this express contractual warranty,

Defendants merely shipped replacement Syndeo machines that were as defective as the initial machine purchased.

51.     Like any contract governed by New York Law, the Equipment Purchase Agreement was subject to a contractual implied covenant of good faith and fair dealing. Defendants also breached that implied covenant, however, by selling Plaintiffs and class members a machine that Defendants knew was defective and could and would not perform in the manner in which it had been represented by Defendants.  And Defendants continued breaching this same implied covenant by merely replacing the Syndeo machine, once it failed, with an equally defective replacement machine.

52.     As a direct, proximate, and foreseeable result of Defendants' contractual breach, Plaintiffs and the class members have been injured.  They, *inter alia*, lost out on the benefit of their bargain and suffered lost business.

53.     Plaintiffs therefore seek an award of compensatory damages as redress for Defendants' breach of the Equipment Purchase Agreement in connection with the sale of the Syndeo machines.

54.     Under the contract, Plaintiffs and the class members also are entitled to and do seek an award of attorneys' fees. *See* Ex. 2 hereto, at License Agreement, § 19 (attorney fee contractual term for prevailing party).

## <u>COUNT IV</u>
### (Breach Of Implied Warranty Of Merchantability)

55.     Plaintiffs hereby incorporate by referenced paragraphs 1-37 of this Class Action Complaint with the same force and effect as if these allegations had been restated herein.

56.     Under operation of law, each of Defendants' sales of their Syndeo machines was subject to an implied warranty of merchantability.

57.     Defendants breached the implied warranty of merchantability because: the Syndeo machines sold to Plaintiffs and the class members were defectively designed or manufactured; 2) the defect existed when Defendants delivered the Syndeo machines to Plaintiffs and the class members; and, 3) as a direct, proximate, and foreseeable result of the defect, Plaintiffs and the class members were injured by having paid for a machine that was defective.

58.     Plaintiffs, therefore, seek an award of money damages to compensate them for the harm sustained as a result of Defendants' breach of the implied warranty of merchantability.

## COUNT V
### (Breach Of Implied Warranty Of Fitness For A Particular Purpose)

59.     Plaintiffs hereby incorporate by referenced paragraphs 1-37 of this Class Action Complaint with the same force and effect as if these allegations had been restated herein.

60.     Defendants sold Syndeo machines exclusively to establishment and professionals offering facial aesthetic treatments.  Further, under the Equipment Purchase Agreement for the Syndeo machine, Defendants dispatched their representatives to install and train Plaintiffs and personnel of class members in the use of the machine.  *See* Ex. 2 hereto, at §4.1 ("An HF [Hydrafacial] sales consultant will contact you to schedule a date and time for the installation of the Equipment and to train your staff on its general use").

61.     Moreover, the License Agreement that formed part of Defendants' Equipment Purchase Agreement for the Syndeo machine, contained the following recital:

> Licensee is leasing or purchasing (and/or has leased or purchased) certain of HF's delivery system(s) and equipment ("HF Equipment" or the "Equipment") which Licensee wishes to utilize in License's business for the delivery of skincare treatments which are advertised and/or offered as "HydraFacial® treatments.

Ex. 2 hereto, at License Agreement, at Recital, ¶ B.

62.    Thus, at the time of contracting, Defendants had reason to know any particular purpose for which the Syndeo was required and that Plaintiffs and the class members were relying on the Defendants' skill or judgment to select or furnish suitable goods.   As a matter of law, therefore each Syndeo machine was subject to an implied warranty that the machine was shall be fit for such purposes.

63.    Defendants breached the implied warranty of fitness for a particular purpose because the defective Syndeo machines Defendants sold and delivered, in fact, were not fit for the purposes for which they were sold.

64.    As a direct, proximate, and foreseeable result of Defendants' breach, Plaintiffs and the class members have been harmed by having paid for Syndeo machines that were unfit for the purpose for which they had been purchased.

65.    Plaintiffs and the class members therefore seek an award of money damages as redress for their injury directly caused by Defendants' breach of the implied warranty of fitness for a particular purpose.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs on behalf of themselves and on behalf of the members of the class, requests as award and relief as follows:

A.  An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives and Plaintiffs' counsel be appointed Class Counsel;

B.  An award of money damages in an amount to be proven at trial, including where provided by law, a trebling of any money damages award, to compensate for Defendants' violations of N.Y. G.B.L., §349 and §350;

C.  An award of money damages to compensate for Defendants' breach of contract and breaches of its implied warranties of merchantability and fitness for a particular purpose;

D.  An order granting Plaintiffs and the class members declaratory, injunctive, and equitable relief against Defendants;

E.  An Order directing Defendants to disseminate a Court-approved notice to the absent class members, informing them about the pendency of this class action, and their rights in that regard;

F.  An award of attorneys' fees and costs of suit under either the terms of the Equipment Purchase Agreement or the common fund or common benefit doctrines, or both;;

G.  An order establishing a common fund to be funded by Defendants from which any and all damages and amounts awarded to class members may be paid, and from which Plaintiffs' counsel may be awarded and paid their reasonable attorneys' fees and costs of suit;

H.  Such other relief as the Court deems just and proper based on the evidence submitted.

Plaintiffs demand a trial by jury on all counts so triable.

Dated: October 23, 2024        Respectfully submitted,


/s/ Azra Z. Mehdi
**THE MEHDI FIRM, P.C.**
Azra Z. Mehdi (AM-9719)
347 5th Avenue, Suite 1402
New York, NY 10016
Tel: (415) 293-8039
e-mail: azram@themehdifirm.com

Roy A. Katriel, Esq. (*pro hac vice* to be filed)
**THE KATRIEL LAW FIRM, P.C.**
2262 Carmel Valley Road, Suite 201
Del Mar, CA 92014
Tel: (619) 363-3333
e-mail: rak@katriellaw.com

Ralph B. Kalfayan, Esq. (*pro hac vice* to be filed)
e-mail: ralph@rbk-law.com
Ian D. Krupar, Esq. (*pro hac vice* to be filed)
e-mail: ian@rbk-law.com
**THE KALFAYAN LAW FIRM, APC**
2262 Carmel Valley Road, Suite 200
Del Mar, CA 92014
Telephone: (619) 232-0331

*Counsel for Plaintiffs and the Putative Class*