**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOL TAN TANNING & SPA LLC, CLEAN SLATE ESTHETICS, LLC, CRYSTAL LOYER dba GLOW STUDIO, DYANE THYFAULT dba LOTUS WAXING & SKINCARE STUDIO, ELITE SKIN & BODY, LLC, GLAM ESSENCE MED SPA, LLC, GLAM+GLOW BEAUTY BAR, LLC, JENNIFER SKURATOV dba SPA THIRSTY, LA CHÍC BOHÈME COLLECTIVE LLC dba LA CHÍC BOHÈME, CHAMPAGNE AESTHETICS, LLC, SAMANTHA SILVA dba ABSOLUTE SKINCARE SPA, LASHES, SKIN & WAXING WITH ALLYSON, LLC, SKYN ALCHEMY, INC., SUSIE'S BEAUTIES, LLC dba BEACHSIDE BEAUTY, THE GLOW AESTHETICS 808, LLC, TOUCH OF SAM LLC, On Behalf of Themselves And All Others Similarly Situated, | Civil Case No. 1:24-cv-08073 |

                                Plaintiffs,

    v.

HYDRAFACIAL LLC dba THE
HYDRAFACIAL COMPANY, and THE
BEAUTY HEALTH COMPANY,

                                Defendants.

## AGREEMENT GOVERNING THE DISCOVERY AND PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

Plaintiffs Sol Tan Tanning & Spa LLC, Clean Slate Esthetics, LLC, Crystal Loyer dba Glow Studio, Dyane Thyfault dba Lotus Waxing & Skincare Studio, Elite Skin & Body, LLC, Glam Essence Med Spa, LLC, Glam+Glow Beauty Bar, LLC, Jennifer Skuratov dba Spa Thirsty, La Chíc Bohème Collective LLC dba La Chíc Bohème, Champagne Aesthetics, LLC, Samantha Silva dba Absolute Skincare Spa, Lashes, Skin & Waxing With Allyson, LLC, Skyn Alchemy, Inc., Susie's Beauties, LLC dba Beachside Beauty, The Glow Aesthetics 808, LLC, Touch Of Sam LLC ("Plaintiffs") and Defendants HydraFacial LLC dba The HyrdaFacial Company

("HydraFacial") and The Beauty Health Company ("BHC," and together with Plaintiffs, the "Parties") agree to cooperate in good faith to address issues relating to the discovery of hard copy documents and electronically stored information ("ESI"). The Parties each agree to the following protocol ("Protocol") regarding the discovery of documents and ESI in this matter. The purpose of this Protocol is to facilitate the exchange of documents and ESI in an efficient manner and in accordance with the Federal Rules of Civil Procedure. To the extent this Protocol does not address certain issues, those issues remain open for resolution in a separate protocol, either negotiated by the Parties or ordered by the Court. Nothing in this Protocol alters or expands the Parties' rights, obligations, or responsibilities pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court.

1.    **Preservation**. The Parties shall take reasonable and proportional steps to preserve reasonably accessible documents and ESI that are relevant to the claims and defenses in this matter.

2.    **Inaccessible ESI**. The Parties agree that the Parties need not preserve, search for, or produce: (1) deleted, slack, fragmented, or other data only accessible by forensics; (2) random access memory (RAM), temporary files, or other data difficult to preserve without disabling the operating system; (3) on-line access data such as temporary internet files, history, cache, cookies, and the like; (4) data remaining from systems no longer in use that is unintelligible on the systems currently in use; and (5) back-up data that is duplicative of data that can be collected elsewhere.

3.    **SEARCH METHODOLOGY**

4.    **Cooperative Process.** The Parties hereby agree that negotiations regarding search terms and other filtering methods to be used on custodial and non-custodial Documents are intended to be a cooperative process, including good faith exchange of information and proposals to facilitate the negotiations.

5.    **De-NISTing.**[1]    Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list (http://www.nsrl.nist.gov/).

6.    **Meet and Confer.**  The Parties shall meet and confer to try to resolve any disputes that may arise under this ESI protocol prior to seeking assistance form the Court.

7.    **Production Timing.**  The Parties agree that rolling productions are appropriate, with the understanding that they must balance the need of the Producing Party to have sufficient time to collect and produce documents, with the need to advance the case without undue delay or prejudice.  As needed, either Party may request that the other Party meet and confer in good faith about the priority of materials to be produced, the anticipated timing of production, and an agreed upon date for the substantial completion of the production that is sufficiently in advance of any relevant deadlines to avoid prejudice to the receiving Party.

8.    **Modifications.**  Nothing in this order prohibits a party from moving the court to modify the terms herein.

9.    **Search Terms, Custodians, Non-Custodial Sources, Date Ranges, and Other Filtering Methods.**  After service of responses and objections to document requests and after these Protocols are agreed to, the Parties shall meet and confer to identify the search terms, custodians, custodial sources, non-custodial sources, date ranges, and any other filtering methods that they will utilize in good faith to identify responsive documents in accordance with their discovery obligations.  Consistent with the Federal Rules of Civil Procedure, the Parties may employ methodologies in addition to search terms to the extent necessary to complete a reasonable and

---

[1] "De-NIST" describes an industry-standard eDiscovery-related process that separates users-created documents from files and data stored on a machine that are produced by a software vendor or hardware manufacturer that are not relevant to discovery.

good faith search for all documents and communications relevant to any claims or defenses in the action.

    a. The Parties shall make good faith efforts to agree upon search terms, custodians, custodial sources, non-custodial sources, date ranges, and all other filtering methods reasonably tailored to return documents responsive to the discovery requests at issue and proportional to the needs of the case.

    b. The Parties will exchange search term hit counts according to the proposed search terms, custodians, custodial sources, non-custodial sources, date ranges, and other filtering methods. Each Party shall be provided with an opportunity to propose additions or amendments to the search procedures and terms through a good faith meet and confer process. The Parties acknowledge that any agreement to the use of such search procedures and terms shall not be construed as a waiver of any party's right to request subsequent searches and productions, particularly where there is a showing that the agreed to search terms and procedures have resulted in inadequate productions or failed to identify relevant materials. The Parties reserve their right to object to any additional requests or subsequent searches.

    c. Other methods to streamline culling of ESI – The parties agree to meet and confer in good faith about the use of technology or other processes used to streamline the production of documents (e.g., TAR, near dupe analysis, etc). If a Party uses technology or other processes to streamline the production of documents that Party will inform the other Party of the technology or process used. The information exchanged as a consequence of this section shall be sufficient to inform the other Party of how the technology or process was utilized (e.g. if Artificial intelligence

or similar Large Language Model (LLM) based tools are trained and used to sort discoverable from non-discoverable documents and or relevant from non-relevant documents the information shared as a result of this section shall include the training process for the AI or LLM). Nothing in this section precludes a Party from asking for more information to the extent that it is not satisfied with the information shared by the other Party.

d. Any unresolved disputes shall be brought before the Court.

10. **Deduplication and threading**.  The Parties may employ, at their own election, industry-standard deduplication procedures globally across non-email ESI at the document level and globally across e-mail at the family level to avoid the production of documents and/or email families that are complete duplicates of others already produced, included as email attachments, or selected for production.  Duplicate documents or email eliminated from production pursuant to these processes will include an "All Custodian" metadata field listing each custodian who possessed the duplicate document or email.  The Parties may also elect to "thread" emails to eliminate duplicative non-inclusive content so that only unique and final-in-time email content is produced.  The Parties shall meet and confer regarding any additional, non-industry standard technology that is proposed to be used for document production.  Nothing in this agreement requires a Party to agree to the use of a non-industry standard technology.

11. **Document production format**.  Documents and ESI shall be produced as follows:

- Page-level Group IV TIFF images for B&W images @ 300 DPI.

- Page level JPEG format images for color items @ 300 DPI; however, color documents for which only the email footer or other similarly inconsequential information is in

color may be produced in black and white.  Upon reasonable request for images to be reproduced in color, the Producing Party shall reproduce identified files.

- In the event information is redacted, regardless of format, images will be clearly labeled to show that material has been redacted.

- TIFF or JPEG images should match the page level PRODBEG number, and placed in a separate image folder labeled "Images."

Image linking load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

12.    **Parent-child relationships**.  The association between an attachment and its parent document must be preserved in such a way that a document and any attachments to that document are produced in the same production set and are identifiable as parent and child.  Upon request from a Party in connection with a produced parent e-mail or e-mails, the other Party will make reasonable efforts to collect and produce embedded files (i.e., hyperlinks to files stored in a shared repository) in connection with the produced parent e-mail or e-mails.

13.    **Embedded files**.  Embedded files, except for images and logos embedded in emails, are to be produced as family groups.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

14.    **Footer**.  Each image is to be endorsed with a unique serial ("BATES") number. The BATES number shall not obscure any information in the image and placed in the lower right corner.  Any other endorsement, such as a confidentiality stamp, should be placed in the lower left corner.

15.    **Native files**.  The Parties agree that all spreadsheets (including but not limited to Microsoft Excel files), video files, or audio files shall be produced in native format in lieu of TIFFs. To the extent any arise, the Parties will meet-and-confer regarding the production of native files in other situations where an electronic document cannot be produced accurately in the TIFF image format.  For all native files produced, a slip sheet shall be included noting that a document was produced in native format.  Documents produced in native format should have extracted text/OCR provided to the extent feasible or available.  The native files should be named after the corresponding PRODBEG number and placed in a separate folder labeled "Natives."  The Producing Party will provide exception documents natively.

16.    **Hard copies**.  All hard-copy documents will be produced in a manner that reflects accurate document unitization including reasonably available attachment and container information.

17.    **Load files and metadata**.  An IPRO LFP or Opticon (OPT) image load file named after the delivery volume for images and document boundaries only will accompany each production.  A separate metadata text file containing the fields below should also be included using standard Concordance delimiters (Comma = 020, Quote = 254, Newline/Return = 174).  The load files should be placed in a separate folder labeled "Data." The delimited metadata load file should include the following fields, if programmatically available:

| FIELD NAME |
| --- |
| All Custodian |
| Custodian |
| ProdBeg |
| ProdEnd |
| ProdBegAttach |
| ProdEndAttach |
| ProdAttachRange |
| FileType |
| Parent Date |
| Sent_Date |
| Sent_Time |

| FIELD NAME |
| --- |
| Create_Date |
| Create Time |
| LastMod_Date |
| LastMod Time |
| Recvd Date |
| Recvd_Time |
| Author |
| From |
| To |
| CC |
| BCC |

| FIELD NAME |
| --- |
| Subject |
| Orig File Name |
| Attach_Count |
| File Ext |
| File Size |
| MD5Hash |
| EntryID or MSGID |
| FilePath |
| Text FilePath |
| Nat_FilePath |

All time fields should be provided in UTC/GMT.

18.    **OCR/extracted text**.  All OCR or Extracted Text files will be provided on the document level for all documents produced and will be named after the corresponding PRODBEG number with the extension of .txt, and placed in a separate folder labeled "Text."

19.    **No obligation to convert third party productions**.  The Parties agree that any document production received from a third party shall be produced in the format in which it was received.

20.    **Privilege and Redactions**.  The production of a privilege or work-product protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection form discovery in this case or in any other federal or state proceeding.  For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

21.    The Parties agree that documents directed to or created by outside counsel on or after October 24, 2024, need not be identified on privilege logs, without any waiver of privilege or work product production for such documents.

22.    **Privilege Log.**  The Privilege Log shall comply with the Federal Rules of Civil Procedure.  No party shall be required to exceed the requirements of the Federal Rules of Civil

Procedure. A party withholding or redacting any responsive document on the basis of privileged shall provide the Receiving Party with a Privilege Log.

23. **Format and Content of Privilege Log.** Privilege Logs shall be provided in Excel or Word document (i.e. table) format and shall contain the following information, to the extent it exists, for each document withheld or redacted: (i) a sequential number associated with each privilege log record; (ii) the date of the document; (iii) a unique privilege log identifier; (iv) the identity of persons who sent (and if different, the identify of all persons who authored or signed) the document and the addressees, recipients, copyees, and blind copyees (with sender, authors, addressees/recipients, copyees, and blind copyees, each separately identified by those categories), and identification of which of them are attorneys; (v) without revealing information itself privileged or protected , a description of the subject matter, sufficient to understand the basis of the claim of privilege or immunity; (vi) the type or nature of the privilege asserted (i.e. attorney-client privilege or work product doctrine, and if such other privilege or immunity is asserted it shall be separately identified and (vii) an indication of whether the document has been redacted and produced or withheld in its entirety. A sperate log entry is required for attachments.

24. **Use of Metadata for Privilege Logs.** A portion of each privilege log may be generated by exporting objective metadata from the review tool used to identify privileged or work-product protected documents where the objective metadata provides the information required under the section above.

25. **Challenging Entries on a Privilege Log.** Should a Receiving Party be unable to ascertain whether or not a document contained on the Privilege Log is privileged or have reason to believe a particular entry on the log is responsive and does not reflect privileged information, the Partis shall meet and confer to attempt to cooperatively resolve the dispute.

26.    **Timing**.   Privilege Logs shall be produced within a reasonable time following production of that cohort of documents.  If a Party makes multiple productions within a reasonable period of time, those productions may be consolidated into one privilege log.  The Receiving Party may ask for an updated Privilege Log after a reasonable time has elapsed.

27.    **Claw back**.  The inadvertent disclosure of any document that is subject to a claim that the document should have been withheld from disclosure as a privileged attorney-client communication, attorney work product or any other applicable privilege shall not constitute a waiver of any privilege or otherwise affect the right to withhold it from production as privileged or work product.  If a request is made in good faith to return any such allegedly privileged or work product document that was inadvertently disclosed, the Party that received the document shall delete it and return all hard copies of it within thirty (30) days.  The privilege or work product status of such document or information shall be deemed to be restored upon the making of such request.  However, nothing herein shall preclude the non-producing party from petitioning the Court to determine whether the document or information constitutes a privileged communication or work product.  In the event the non-producing party intends to challenge the claim of privilege or work product, the non-producing party may retain a copy of the document at issue for the purpose of seeking a ruling from the Court.  To the extent such a document is submitted to the Court in association with any such proceeding, the document should be submitted in accordance with this Court's required seal procedure.

28.    **Relevance Determinations.**  The parties recognize that there may be categories of documents and attachments that will be captured by searches, but that are not relevant to any party's claims or defenses.  Nothing in this protocol will limit a Producing Party's ability to review

documents for responsiveness prior to production.  The Parties also recognize that it may be desirable to avoid producing large numbers of irrelevant documents.

29.    **Scope of Agreement**.  The Parties may, by written agreement, amend or otherwise modify this Protocol.  Nothing in this Protocol is intended to, or does, waive any objections to discovery or admissibility, or any other privileges or immunities or, except as specifically provided herein, impose obligations different than those contained in the Federal Rules of Civil Procedure or the Local Rules of this Court.  The Parties recognize that additional issues or unforeseen circumstances may arise in the course of discovery, and nothing in this Protocol is intended to, or does, restrict the ability of either Party to request additional information or seek additional relief from the Court.  The Parties each retain the right to seek exceptions, amendments, or modifications to this Protocol from the Court.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.


Dated: November 26, 2025                    **The Kalfayan Law Firm, APC**

                                                          BY: /s/ Ralph B. Kalfayan[2]__
                                                             Ralph B. Kalfayan, Esq

                                                          *Counsel for Plaintiffs and Proposed Class*


Dated:  November 26, 2025                    **Reed Smith LLP**
                                                          BY: /s/ John C. Scalzo_____
                                                                John Scalzo, Esq.

                                                          *Counsel for Defendants*

---

[2] In accordance with SDNY's Electronic Case Filing Rule & Instructions Section 8, I, John C. Scalzo, attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Notwithstanding anything in the foregoing to the contrary, the parties must comply with Rule 5 of the Undersigned's Individual Practices in Civil Cases with respect to requests to file materials under seal or with redactions.

SO ORDERED.

12/1/2025

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE