UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
SOL TAN TANNING & SPA LLC, CLEAN :
SLATE ESTHETICS, LLC, CRYSTAL LOYER :
dba GLOW STUDIO, DYANE THYFAULT dba :
LOTUS WAXING & SKINCARE STUDIO, :
ELITE SKIN & BODY, LLC, GLAM ESSENCE :
MED SPA, LLC, GLAM+GLOW BEAUTY BAR, :
LLC, JENNIFER SKURATOV dba SPA :
THIRSTY, LA CHÍC BOHÈME COLLECTIVE :
LLC dba LA CHÍC BOHÈME, CHAMPAGNE :
AESTHETICS LLC, SAMANTHA SILVA dba :
ABSOLUTE SKINCARE SPA, LASHES, SKIN & :
WAXING WITH ALLYSON LLC, SKYN :       24-CV-08073 (VEC)
ALCHEMY, INC., SUSIE'S BEAUTIES, LLC dba :
BEACHSIDE BEAUTY, THE GLOW :         OPINION AND ORDER
AESTHETICS 808, LLC, TOUCH OF SAM LLC, :
On Behalf of Themselves and All Others Similarly :
Situated, :
                                     :
                                     :
                        Plaintiffs,  :
                                     :
         -against-                   :
                                     :
HYDRAFACIAL LLC dba THE HYDRAFACIAL :
COMPANY, and THE BEAUTY HEALTH :
COMPANY,                             :
                                     :
                                     :
                        Defendants.  :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiffs, a group of salon and spa owners and aestheticians, allege that Defendants HydraFacial LLC ("HydraFacial") and the Beauty Health Company ("BHC") sold and manufactured a defective facial treatment machine. *See* Am. Compl., Dkt. 42 ¶¶ 12–48. They bring various claims on behalf of themselves and a putative class of purchasers. Defendants moved to dismiss all but one part of one claim. *See* Def. Mot. to Dismiss, Dkt. 44 (the "Motion"

1

or "Mot."). Plaintiffs oppose. *See* Opp. to Mot., Dkt. 47 ("Opp."). Defendants' Motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

Defendant HydraFacial is a wholly owned subsidiary of Defendant BHC. Am. Compl. ¶ 47. In March 2022, Defendants launched sales of a facial treatment machine called the Syndeo. *Id.* ¶ 58. Plaintiffs, who are salon and spa owners and aestheticians, purchased Syndeos between 2022 and 2023. *Id.* ¶¶ 12–46. Upon purchase, each Plaintiff executed an Equipment Purchase Agreement with HydraFacial. *See id.* ¶¶ 12–46, Ex. 2. Included with the Equipment Purchase Agreement is a User Guide detailing best practices for product use. The User Guide cross-references to, and is crossed-referenced by, the Equipment Purchase Agreement. *See id.* Ex. 20. Each purchase also included a Purchase Order Agreement with additional terms. *See id.* Ex. 10. Together, the documents detailed the terms of sale, warranties, and instructions for using the Syndeo. *See id.* Exs. 2, 10, 20.

As early as March 2022, the Syndeo began exhibiting defects, including "part fitment," "blemishes," "a more serious plugging problem . . . leading to low flow and clogs in the system," "part non-conformance, loud distracting noises, difficult bottle insertion, suction/waste/leakage, and faulty handpieces, screens, and rattling trays." *Id.* ¶¶ 3, 63. Plaintiffs attribute some of the defects to the design and re-design of the Syndeo; others are not attributed to any particular cause. *Id.* ¶¶ 62–63, 66. After Plaintiffs and other customers notified Defendants of the problems with the Syndeo, Defendants offered two subsequent versions of the product, neither of which solved the problems. *Id.* ¶¶ 66–69.

---

[1] For purposes of deciding the Motion to Dismiss, the Court assumes the truth of all well-pled factual allegations in the Amended Complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Plaintiffs filed suit in 2024 and amended their complaint the following year. *See* Compl., Dkt. 1; Am. Compl. The Amended Complaint brings claims for breach of the implied warranty of merchantability, breach of contract, breach of express warranty, and violations of New York General Business Law §§ 349 and 350. *Id.* ¶¶ 94–129. Defendants moved to dismiss the Amended Complaint in its entirety, except for the breach of express warranty claim, to the extent such breach arises out of manufacturing defects associated with the Syndeo rather than design defects. *See* Mot. Plaintiffs oppose. *See* Opp.

## DISCUSSION

### I.     Legal Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).[2] "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citations omitted). The Court accepts Plaintiffs' well-pled factual allegations as true, *Twombly*, 550 U.S. at 555, and "draw[s] all reasonable inferences in the plaintiff's favor." *Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

---

[2] Although Defendants state that they seek dismissal both for failure to state a claim and for lack of subject matter jurisdiction, their Memorandum does not present any substantive arguments about subject matter jurisdiction. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the Amended Complaint brings claims on behalf of a nationwide putative class, minimal diversity is alleged, and the amount in controversy exceeds $5 million. *See* Am. Compl. ¶ 51. The Court construes Defendants' Motion as seeking to dismiss only on the basis of failure to state a claim.

## II.  Breach of Implied Warranty of Merchantability

First, Defendants move to dismiss Plaintiffs' claim for breach of the implied warranty of merchantability.  Am. Compl. ¶¶ 94–98.  In New York, every contract contains an implied warranty of merchantability unless excluded or modified.  N.Y. U.C.C. Law § 2-314(1).  To exclude or modify an implied warranty of merchantability, the exclusion must "mention merchantability" and, if it is made in writing, must be "conspicuous."  *Id.* § 2-316(2).  A term is "conspicuous" if it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it.  Whether a term is 'conspicuous' or not is a decision for the court."  *Id.* § 1-201(b)(10).

Here, the Equipment Purchase Agreement contains a waiver of the implied warranty of merchantability.  It provides, in relevant part: "Some jurisdictions where we sell may have legal principals of 'implied' or 'merchantability' or 'fitness' warranties, but none of those apply here (and they're 'expressly waived')."  Am. Compl. Ex. 2 at 2.  Because the waiver "mention[s] merchantability," it qualifies as an exclusion pursuant to N.Y. U.C.C. § 2-316.  It is also conspicuous: although it is in ordinary typeface, it appears under a bolded, underlined heading and is written in clear, specific language.  *See Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010) (waiver was conspicuous when key terms were written in all capital letters and the text "expressly state[d] that the dealer makes no express or implied warranties"); *Dallas Aerospace, Inc. v. CIS Air Corp.*, No. 00 Civ. 1657 (BSJ), 2002 WL 31453789, at *2 (S.D.N.Y. Oct. 31, 2002) (conspicuousness requirement satisfied where waiver appeared under a heading in bold typeface); *Spinal Techs., LLC v. Mazor Robotics Inc.*, 624 F. Supp. 3d 330, 340 (W.D.N.Y. 2022) (waiver clause was conspicuous because it was styled in such a way that it "stands out from the rest of the text").  Accordingly, no reasonable person

4

reading the Equipment Purchase Agreement would fail to notice or understand that the Agreement waived the implied warranty of merchantability.

Plaintiffs analogize to two New York Supreme Court cases to argue that the Equipment Purchase Agreement's waiver of the implied warranty of merchantability was not conspicuous. Neither is persuasive. The first case, *Super PC Systems, Inc. v. Kaitryanna Pizza Inc.*, concerned a waiver clause that was "buried in language indistinguishable from every other provision of the eight-page contract" and had blurry fine print that was "barely legible." No. 653246/2019, 2022 WL 171165, at *8 (Sup. Ct. N.Y. Jan. 10, 2022). The Equipment Purchase Agreement, by contrast, placed the waiver under a bolded and underlined heading and clearly stated that any "'implied' or 'merchantability' or 'fitness' warranties" are "expressly waived." Am. Compl. Ex. 2 at 2. The second case, *Direct Capital Corp. v. New ABI Inc.*, involved a waiver clause that was on a different page from the material terms and conditions and was "essentially buried in the text" of "32 boilerplate paragraphs" in indistinguishable font. 13 Misc. 3d 1151, 1163 (Sup. Ct. Kings Cnty. 2006). Here, the waiver is the second provision of the contract and is featured after key payments terms and before terms of delivery, consumables, and related agreements. Am. Compl. Ex. 2 at 2. Simply put, a reasonable person would notice the waiver.

Plaintiffs further argue that the waiver clause in the Equipment Purchase Agreement is not conspicuous because the text of the clause is not printed in bolded text. This argument is unpersuasive. First, § 1-210(b) is deliberately not prescriptive about what constitutes conspicuousness, reflecting "the legislature's desire to avoid the implication that any specific type of 'conspicuousness' is required." *NY Drilling, Inc. v. TJM, Inc. LLC*, 573 F. Supp. 3d 854, 858 n.4 (E.D.N.Y. 2021) (discussing the history of § 1-210(b)). The fact that the text of the waiver clause is not bolded, therefore, does not necessarily render the clause inconspicuous.

Second, the presence of other means of drawing the reader's attention to the waiver clause — specifically, the bolded and underlined heading, the placement of a clear disclaimer of warranty at the beginning of the paragraph in which it appears, and the fact that the waiver is cross-referenced in the User Guide — eliminates any doubt that a reasonable reader would notice it.

Accordingly, by signing the Equipment Purchase Agreement, Plaintiffs waived the implied warranty of merchantability.

### III. Breach of Contract, Implied Covenant of Good Faith and Fair Dealing, and Fraudulent Inducement

Defendants move to dismiss Plaintiffs' claims for breach of contract, breach of the covenant of good faith and fair dealing, and fraudulent inducement. The three claims are pled together. *See* Am. Compl. ¶¶ 99–108. The claims are interrelated because Plaintiffs allege that Defendants fraudulently induced them to enter into the allegedly breached contract, and, pursuant to New York law, "parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (internal quotation marks omitted).

#### A. Breach of Contract

To state a claim for breach of contract pursuant to New York law, Plaintiffs must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)). To survive a motion to dismiss, a complaint must "at least allege which agreement was breached and the relevant breached provisions of that contract." *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016) (citing *Wolff v.*

*Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003)).

Here, Plaintiffs allege that Defendants "breached the Equipment Purchase Agreements because the equipment provided was a defective non-conforming device." Am. Compl. ¶ 101. That assertion, standing alone, is insufficient to state a claim for breach of contract because it does not "allege the specific provisions of the contract upon which liability is predicated." *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F. Supp. 3d 16, 33 (S.D.N.Y. 2017), *aff'd*, 712 F. App'x 85 (2d Cir. 2018). Plaintiffs, therefore, fail to state a claim for breach of contract.

### B.   Implied Covenant of Good Faith and Fair Dealing

Pursuant to New York law, "all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002). The covenant is "a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 169 (2d Cir. 2004). New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).

Plaintiffs' assertion that Defendants acted in bad faith because they provided a "defective" product, Am. Compl. ¶ 102, is materially identical to its breach of contract claim and must be dismissed for that reason. *See Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP*, No. 14-CV-9839 JMF, 2015 WL 1809001, at *4 (S.D.N.Y. Apr. 20, 2015) ("An implied-covenant

claim can survive a motion to dismiss only if it is based on allegations different than those underlying the accompanying breach of contract claim and the relief sought is not intrinsically tied to the damages allegedly resulting from the breach of contract." (cleaned up)).

### C. Fraudulent Inducement

"Under New York law, to sustain a fraudulent inducement claim the Plaintiff must plausibly allege that '(1) the defendant made a material, false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation and (4) the plaintiff suffered damage as a result of such reliance.'" *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011) (citing *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 1996)).  Pursuant to Federal Rule of Civil Procedure 9(b), plaintiffs alleging fraud must "state with particularity the circumstances constituting the fraud."  "This means the who, what, when, where, and how: the first paragraph of any newspaper story." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017) (internal quotation marks omitted).  Plaintiffs also must "allege facts that give rise to a strong inference of fraudulent intent," either by demonstrating that Defendants had "motive and opportunity to commit fraud" or by alleging "strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

The Amended Complaint does not plead a fraudulent inducement claim as its own cause of action; rather, it references fraudulent inducement as part of the breach of contract claim.  Am. Compl. ¶¶ 105–06.  To the extent the Court can piece together an independent fraudulent inducement claim, it falls far short of satisfying the heightened pleading standard set forth by Rule 9(b).

As an initial matter, Plaintiffs fail to state with particularity the statements they purport to be fraudulent. Plaintiffs refer generally to Defendants' alleged "concealment and opposite representation as to the superior nature and performance of the Syndeo," but do not specify when or where those statements were made, who made them, or what, precisely, was said. Am. Compl. ¶ 105. Elsewhere in the Amended Complaint, Plaintiffs refer to statements that Defendants made "in their public financial filing and press releases" about the Syndeo's superior performance, "handy functional benefits," and "ease of . . . use," but do not allege which filings or press releases contain the fraudulent statements or what specific representations were made. Am. Compl. ¶ 75. Even if Plaintiffs had identified those misstatements with particularity, it is unlikely that general assertions about the Syndeo's user-friendly design or superior performance would amount to more than "an exaggeration or overstatement expressed in broad, vague, and commendatory language" or "[s]ubjective claims about products, which cannot be proven either true or false." *President Container Group II, LLC v. Systec Corporation*, 467 F. Supp. 3d 158, 166 (S.D.N.Y. 2020) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007)). Such statements, at best, are "puffery," which cannot form the basis for a fraud claim. *Id.*[3]

The sole misstatement alleged in the Amended Complaint that may satisfy Rule 9(b)'s particularity requirement is the representation in Defendants' 2022 10-K and 10-Q forms that "prospective Syndeo purchasers and Syndeo owners . . . should get 15 Syndeo facial treatments

---

[3] Even if these statements were actionable, they would nevertheless fail to state a claim for fraudulent inducement because, at base, they simply support Plaintiffs' allegation that Defendants failed to deliver the Syndeo in its promised condition. Any claim for fraudulent inducement arising out of these statements, therefore, would be duplicative of Plaintiffs' breach of contract claim, and would need to be dismissed for that reason. *See Xeriant, Inc. v. XTI Aircraft Co.*, 762 F. Supp. 3d 345, 353 (S.D.N.Y. 2025) ("[W]here (1) a valid agreement (2) governs the subject matter of a dispute, courts typically do not permit plaintiffs to repackage their dispute into non-contractual causes of action.").

9

from a bottle of serum for their Syndeo." Am. Compl. ¶ 70. According to Plaintiffs, that statement was false because, due to "the defects plaguing the Syndeo that caused it to experience clogging or plugging," it was "virtually impossible for the Syndeo to yield 15 treatments before requiring serum bottle replenishment." *Id.* ¶ 71. The Amended Complaint is entirely devoid, however, of allegations from which the Court can draw an inference — let alone a "strong inference" — of fraudulent intent. *Shields*, 25 F.3d at 1128. Nothing in the Amended Complaint suggests that Defendants received any "concrete benefits" from selling defective products or lying about how many facial treatments Syndeo purchasers could get from their machines, so Defendants had no known motive or opportunity to commit fraud. *Bigsby v. Barclays Capital Real Estate, Inc.,* 170 F. Supp. 3d 568, 578 (S.D.N.Y. 2016). Plaintiffs likewise fail to allege any circumstantial evidence sufficient to show that, at the time Defendants made the alleged misstatements in their 2022 10-K and 10-Q, they knew, or were reckless for failing to know, that the Syndeo was defective. Instead, Plaintiffs simply state that Defendants "knew [the representation] was untrue, misleading, and deceptive because the defective nature of the Syndeo meant that the machine could not achieve [the fifteen-treatments-per-bottle] yield." Am. Compl. ¶ 118. "[C]onclusory allegations regarding [Defendants'] intent are not enough" to support a strong inference of scienter pursuant to Rule 9(b). *PetEdge*, 234 F. Supp. 3d at 495.

Finally, even if the Amended Complaint had adequately alleged that the statements in the 2022 10-K and 10-Q were fraudulent, it nowhere alleges that Plaintiffs relied on the disclosures in the 10-K and 10-Q when they purchased the product.

In short, Plaintiffs fail to state a claim for fraudulent inducement.

### IV. Breach of Express Warranty

Defendants move to dismiss Plaintiffs' claim for breach of express warranty in part. "To state a claim for an express breach of warranty under New York law, the plaintiff must plead (1)

10

the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Angeles v. Nestlé USA, Inc.*, 632 F. Supp. 3d 309, 317 (S.D.N.Y. 2022) (internal quotation marks omitted). The parties appear to agree that the language in the Equipment Purchase Agreement and the User Guide promising to "repair or replace the [Syndeo] for covered defects" constitutes a warranty and that the Amended Complaint alleges that Defendants breached that warranty by failing to repair the defective machines or to provide functional replacements. Am. Compl. ¶¶ 8, 112. They disagree, however, about whether the "covered defects" referenced in the warranty refer solely to manufacturing defects — that is, defects that arise "when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm" — or whether it also includes design defects — that is, defects that arise "when the product as designed is unreasonably dangerous for its intended use." *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 226 (S.D.N.Y. 2015) (quoting *McCarthy v. Olin Corp.*, 119 F.3d 148, 154–55 (2d Cir. 1997)).

### A.     The Warranty in the User Guide Covers Manufacturing Defects Only

The warranty, read in context, clearly covers only manufacturing defects. The Equipment Purchase Agreement provides that the Syndeo "comes with a standard two (2) year limited warranty, which is set forth in the User Guide." Am. Compl. Ex. 2 at 2. The "Limited Warranty" section of the User Guide, in turn, contains a subsection titled "What Is Covered." Am. Compl. Ex. 20 at 23. That subsection provides, in its entirety: "The warranty for the [Syndeo] covers defects in material or workmanship in the [Syndeo]." *Id*. It is well established that "a warranty that protects against defects in materials or workmanship covers manufacturing defects, but not design defects." *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 554

(S.D.N.Y. 2016) (citing *Garcia*, 127 F. Supp. 3d at 226–27). Accordingly, the plain text of the warranty leaves no doubt that only manufacturing defects are covered.

Plaintiffs' argument that the warranty is ambiguous, inasmuch as it does not explicitly *exclude* design defects from coverage, is unpersuasive. "The scope of an express warranty necessarily depends on what a reasonable consumer would believe" upon reading it. *West v. Sambazon*, Inc., 750 F. Supp. 3d 356, 374 (S.D.N.Y. 2024) (quoting *Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F. Supp. 3d 102, 119 (E.D.N.Y. 2021)). Here, the User Guide clearly provides that Defendants' warranty "covers defects in material or workmanship" and nothing else. Am. Compl. Ex. 20 at 23. Plaintiffs make no attempt to explain how any reasonable consumer could construe the warranty — which is specifically labeled a "Limited Warranty" — to cover an entirely separate category of defects beyond the ones specified in the text. *See Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 314 (N.D.N.Y. 2019) ("Courts in this circuit have found that a warranty protecting 'defects in materials or workmanship' covers manufacturing defects but not design defects." (collecting cases)).

### B. The Breach of Express Warranty Claim is Dismissed Only to the Extent It Arises out of Defects that Plaintiffs Have Expressly Identified Solely as "Design Defects"

Having determined that Defendants' warranty covers only manufacturing defects, the Court must dismiss Plaintiffs' claim for breach of express warranty to the extent it arises out of alleged design defects. That being said, "[i]t is difficult for a plaintiff at the pleading stage in the litigation to know the source of the defect that was responsible for the harm caused: whether there was a surprising manufacturing problem, or a systemic issue with a product in its design." *Garcia*, 127 F. Supp. 3d at 226 (cleaned up). Additionally, a plaintiff is generally "entitled to plead claims for both design defect and manufacturing defect in the alternative." *Catalano*, 167 F. Supp. 3d at 555.

Here, Plaintiffs expressly allege that several of the problems with the Syndeo — specifically, "part non-conformance, loud distracting noises, difficult bottle insertion, suction/waste/leakage, and faulty handpieces, screens, and rattling trays" — were "[d]ue to design defects." Am. Compl. ¶ 63. Given Plaintiffs' affirmative assertion that those issues are design defects, any breach of warranty claim arising out of them must be dismissed. It is unclear, however, whether the remaining defects described in the Amended Complaint (such as "part fitment," "blemishes," and a "plugging problem . . . leading to low flow and clogs in the system") relate to the Syndeo's design or its manufacturing. *Id*. Drawing all reasonable inferences in Plaintiffs' favor, as the Court must at this stage, the Court finds it plausible that those problems are manufacturing defects. Plaintiffs' claim for breach of warranty may proceed, therefore, to the extent it arises out of defects not affirmatively identified solely as "design defects" in the Amended Complaint.

V. **Unfair Business Practice and False Advertising Claims Pursuant to New York General Business Law §§ 349 and 350**

Defendants move to dismiss Plaintiffs' claims for unfair business practices and false advertising pursuant to New York General Business Law §§ 349 and 350. To state a claim pursuant to these statutes, Plaintiffs must allege that Defendants "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023). The alleged deceptive act "must occur in New York." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002).

A. **All But One Named Plaintiff Fail to Allege a Nexus to New York**

All but one of the named Plaintiffs are non-New York residents, and the Amended Complaint does not represent that those Plaintiffs conduct business in New York or otherwise

13

have any connection to New York.  The only nexus to New York that those Plaintiffs allege is a New York choice of law provision in the Equipment Purchase Agreement.  Am. Compl. ¶ 49.  That is insufficient, on its own, to give rise to a New York General Business Law claim, which requires that each Plaintiff must be deceived while in New York.  *See Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 634–35 (S.D.N.Y. 2016).  The non-New York Plaintiffs' §§ 349 and 350 claims, therefore, must be dismissed.

> **B.    The One New York-Based Plaintiff, Jennifer Skuratov, Fails to Allege Facts from Which the Court Can Infer that Defendants' Deception Caused Her Injury**

The one Plaintiff who is a New York resident, Jennifer Skuratov, fails to state a claim pursuant to §§ 349 and 350 for other reasons.  The crux of the §§ 349 and 350 claims is that Defendants advertised the Syndeo's "superior attributes and capabilities" without disclosing its defects.  *See* Am. Compl. ¶ 121.  But Skuratov does not actually allege that she was aware of any of Defendants' purportedly deceptive statements "before [s]he purchased or came into possession" of the Syndeo.  *Gale v. Int'l Bus. Machs. Corp.*, 9 A.D.3d 446, 447 (2d Dep't 2004).  Put otherwise, Skuratov fails to allege that she suffered any injury "as a result" of Defendants' alleged deception.  *MacNaughton*, 67 F.4th at 96.

Although the Amended Complaint is insufficient to state a claim in its current form, amendment may be appropriate as to Skuratov's §§ 349 and 350 claims.  Skuratov alleges that she purchased the Syndeo on March 16, 2022, and that Defendants first marketed the product early that month.  Am. Compl. ¶¶ 26, 62.  It is conceivable that Defendants may have deceived Skuratov during that narrow period of time between when they began marketing the Syndeo and when she purchased it.  If Skuratov is in possession of facts to that effect, the Court grants leave for Plaintiffs to allege those facts upon amendment.

### VI. Claims against Defendant BHC

Defendants move to dismiss all of Plaintiffs' claims against BHC, HydraFacial's parent company. "It is fundamental that a parent is considered a legally separate entity from its subsidiary, and cannot be held liable for the subsidiary's actions based solely on its ownership of a controlling interest in the subsidiary." *New York State Elec. and Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 224 (2d Cir. 2014) (citations omitted). It is likewise "well established that, generally, a party who is not a signatory to a contract cannot be held liable for breaches of that contract." *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009) (collecting cases). Nevertheless, a parent may be held liable for contractual claims against its subsidiary if it "manifests an intent to be bound by the contract"; that intent may be inferred from (1) "the parent's participation in the negotiation of the contract," (2) the subsidiary's status as "a dummy for the parent," or (3) the fact that "the subsidiary is controlled by the parent for the parent's own purposes." *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 284 (S.D.N.Y. 2023).

As an initial matter, BHC is not alleged to be a signatory to any agreements with Plaintiffs. Each Purchase Order Agreement referenced in the Amended Complaint specifies that it "is entered into between HydraFacial LLC, a division of The Beauty Health Company, on behalf of itself and its applicable affiliate entities and subsidiaries" and a Plaintiff. Am. Compl. Ex. 10 at 1. Although Plaintiffs argue the phrase "applicable affiliate entities" renders BHC itself a party to the contract, *see* Opp. at 25, that is not correct; the Purchase Order Agreement explicitly describes HydraFacial as a "division" of BHC, Am. Compl. Ex. 10 at 1. The phrase "on behalf of its applicable affiliate entities and subsidiaries" modifies HydraFacial, not BHC. *Id.* Neither the Purchase Order Agreement, nor the Equipment Purchase Agreement, nor the

15

User Guide ever defines BHC as an "applicable affiliate entit[y]," nor do they contain any other indicia that BHC was meant to be a party in privity to any agreement with Plaintiff.[4] *Id*.

Plaintiffs also have not pled facts from which the Court can otherwise infer that BHC manifested an intent to be bound by any agreement with Plaintiffs. The sole allegations Plaintiffs highlight in support of their argument that BHC should be liable are that BHC and its officers "directed the design of the Syndeo, how to deal with the defects that the company had identified internally, and how to handle the continued Syndeo replacements under warranty." Opp. at 26; *see* Am. Compl. ¶¶ 63–84. At best, these allegations show BHC's involvement in assisting HydraFacial with the development and rollout of the Syndeo and in assisting it with the fallout from a troublesome product. They do not show that BHC "participat[ed] in the negotiation of any contract" with Plaintiffs, that HydraFacial is a "dummy" for BHC, or that HydraFacial is "controlled" by BHC for BHC's "own purposes." *Kitchen Winners*, 668 F. Supp. 3d at 284. Accordingly, the claims against BHC must be dismissed.

## VII. Claims Brought by Plaintiff Jennifer Skuratov

Defendants move to dismiss Plaintiff Jennifer Skuratov for lack of standing on the ground that she did not purchase the Syndeo herself; rather, her business, Spa Thirsty, Inc. ("Spa

---

[4] Plaintiffs argue "at a minimum" that the breach of express warranty claim against BHC should survive notwithstanding BHC's lack of contractual privity with Plaintiffs because New York law does not require privity for such claims. Opp. at 26–27. That is not correct in this case. "[U]nder New York law, privity is an essential element of a cause of action for breach of express warranty, unless the plaintiff claims to have been personally injured." *Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 550 (S.D.N.Y. 2022) (quoting *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014)); *cf. Gwinn v. Laird Superfood, Inc.*, 643 F. Supp. 3d 450, 457–58 (S.D.N.Y. 2022) (not requiring privity because the defendant was the seller or manufacturer of the product). Plaintiffs have not alleged personal injury or that BHC is a seller or manufacturer of the Syndeo, so privity (or some other evidence of an intent to be bound) is required even for the breach of express warranty claim against BHC.

Thirsty"), purchased it. Plaintiffs concede that Spa Thirsty is the proper Plaintiff and move to substitute Spa Thirsty for Skuratov as the real party in interest.[5] Opp. at 19–20.

Federal Rule of Civil Procedure 17(a)(3) provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Here, Plaintiffs identified the real party in interest promptly after Defendants raised their objection to Skuratov. On reply, Defendants did not raise any objections to substituting Spa Thirsty for Skuratov, and the Court sees no reason why either party would be prejudiced by the substitution. The Court, therefore, substitutes Spa Thirsty for Plaintiff Jennifer Skuratov pursuant to Federal Rule of Civil Procedure 17(a)(3).

## VIII. Injunctive Relief

Finally, Defendants move to dismiss Plaintiffs' request "to enjoin Defendants from continuing to market, service, or replace the Syndeo machines without disclosing the systemic defects plaguing the machines." Am. Compl. ¶ 128. To obtain injunctive relief on the basis of past injury, Plaintiffs must show that they are "likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).

Plaintiffs fail to allege facts from which the Court can infer that they are likely to suffer future injury. The sole argument Plaintiffs present is that Defendants "continue to fail to honor their warranty obligations and [Plaintiffs] all have defective Syndeos despite Defendants' claim they already replaced the machines under warranty." Opp. at 11 n.2. Even accepting this

---

[5] Spa Thirsty is domiciled in New York and conducts all business in New York. *See* Am. Compl. ¶ 26. Accordingly, it, like Skuratov, appears to satisfy the nexus requirement for the claims pursuant to New York General Business Law §§ 349 and 350.

conclusory assertion as true, it fails to explain why injunctive relief is appropriate.  "[P]ast purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate" because "there is no reason to believe that all, or even most, of the class members—having suffered the harm alleged—will choose to buy [the Syndeo] in the future."  *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147–48 (2d Cir. 2020).  Any harm they may have historically suffered can be remedied with money damages.

Accordingly, the request for injunctive relief is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED in part and DENIED in part.  All of Plaintiffs' claims against BHC are DISMISSED.  Plaintiffs' claims for breach of the implied warranty of merchantability, breach of contract, fraudulent inducement, violations of New York General Business Law §§ 349 and 350, and injunctive relief are DISMISSED.  Plaintiffs' claim for breach of express warranty is DISMISSED only to the extent it arises out of alleged defects affirmatively identified as "design defects" in the Amended Complaint; that claim may proceed in all other respects.

In lieu of dismissing Plaintiff Jennifer Skuratov for lack of standing, the Court SUBSTITUTES Spa Thirsty, Inc. for Plaintiff Skuratov pursuant to Federal Rule of Civil Procedure 17(a)(3).

The Court "should freely give leave [to amend the complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2).  "However, a request to replead should be denied in the event that amendment would be futile."  *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012).  In this case, many of the deficiencies with the Amended Complaint outlined in this Opinion were previously identified in Defendants' Motion to Dismiss the original Complaint.  *See* Mot. to Dismiss, Dkt. 22; Def. Mem. in Support of Mot. to Dismiss, Dkt. 24.

Having already failed to address those problems upon amendment, the Court finds that further amendment would largely be futile. Accordingly, leave to amend is DENIED as to all of the dismissed causes of action except for Plaintiff Spa Thirsty, Inc.'s claims pursuant to New York General Business Law §§ 349 and 350, for the reasons discussed in Section V.B. of this Opinion.

If Plaintiffs wish to file a Second Amended Complaint that addresses the deficiencies with Spa Thirsty's §§ 349 and 350 claims, they must move for leave to do so not later than **January 9, 2026**. Any motion for leave must include (1) a letter brief, not longer than 500 words, in which Plaintiffs explain how the proposed Second Amended Complaint addresses the deficiencies, and (2) one clean copy and one redline copy of the proposed Second Amended Complaint. Defendants may respond to the motion for leave, in a letter brief not longer than 500 words, not later than **January 23, 2026.**

The Clerk of Court is respectfully directed to close the motion at Dkt. 44 and to substitute Spa Thirsty, Inc. for Plaintiff Jennifer Skuratov on the docket.

**SO ORDERED.**

Date:  December 22, 2025
       New York, New York

                                                **VALERIE CAPRONI**
                                                **United States District Judge**